## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| ROXIE L. IDEGWU | : |
| --- | --- |
| Plaintiff, | : |
| | : Civ. A. No. 12-1134-RGA/MPT |
| v. | : |
| | : |
| CAROLYN W. COLVIN, | : |
| Acting Commissioner of | : |
| Social Security, | : |
| | : |
| Defendant. | : |

## **REPORT AND RECOMMENDATION**

## I.    **INTRODUCTION**

On September 14, 2012, plaintiff Roxie L. Idegwu ("plaintiff") filed this action

against defendant Carolyn W. Colvin, Acting Commissioner of Social Security

("defendant").[1]  Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a

decision by defendant denying her application for disability insurance benefits ("DIB")

under Title II of the Social Security Act.  Presently before the court are the parties'

cross-motions for summary judgment.[2]  For the reasons set forth below, the court

recommends plaintiff's motion for summary judgment be denied, and defendant's

cross-motion for summary judgment be granted.

## II.    **BACKGROUND**

### A.    **Procedural History**

---

[1] Carolyn W. Colvin became the Commissioner of Social Security on February
13, 2013, after this proceeding was initially filed. Pursuant to Rule 25(d)(1) of the
Federal Rules of Civil Procedure ("FED. R. CIV. P"), Carolyn W. Colvin replaced the
previous Commissioner, Michael J. Astrue, as defendant in this matter.

On July 16, 2009, plaintiff filed her application for DIB, claiming she was disabled beginning on October 10, 2006 due to osteoarthritis, diabetes, high blood pressure, and degenerative disc disease status post-arthroscopic surgery.[2] Plaintiff amended her onset date prior to the administrative hearing to allege disability since October 26, 2009.[3] Plaintiff's application was denied initially on November 4, 2009, and on reconsideration on January 8, 2010.[4] On February 9, 2010, plaintiff filed a written request for a hearing.[5]

A hearing before Administrative Law judge ("ALJ") Judith A. Showalter was conducted on December 16, 2010.[6] Plaintiff, represented by counsel, testified at the hearing.[7] Adena Leviton, an impartial vocational expert ("VE"), also appeared at the hearing.[8] On January 28, 2011, the ALJ issued a written decision denying plaintiff's application for DIB.[9] The ALJ noted plaintiff's insured status expired on September 30, 2010, and therefore, she was required to establish disability on or before that date in order to be entitled to a period of disability and DIB.[10] After review of the evidence, the ALJ held plaintiff was not disabled under sections 216(l) and 223(d) of the Social Security Act.[11] Specifically, the ALJ found plaintiff had sever impairments, including obesity, degenerative joint disease of the bilateral knees, and degenerative disc

---

[2] Docket Item 11 at 136-37 (hereinafter "D.I. __.").
[3] *Id.* at 135
[4] *Id.* at 87-92, 94-99
[5] *Id.* at 100-01
[6] *Id.* at 28-82.
[7] *Id.* at 35-70.
[8] *Id.* at 71-77.
[9] *Id.* at 12-23.
[10] *Id.* at 12.
[11] *Id.* at 16-23.

2

disease of the cervical spine, but nonetheless had the residual functional capacity to perform simple unskilled light work as defined in 20 C.F.R. § 404.1567(b).[12]  The ALJ further found plaintiff could perform said work, except that she can only stand and walk for 2 hours in an 8 hour workday, sit for 6 hours in an 8 hour workday, with posturals that are occasional, but no climbing of a rope, ladder or scaffold, and no frequent handling, fingering and feeling.[13]  The ALJ also determined plaintiff was to avoid working overhead and concentrated exposure to extreme cold or hazards.[14]

Plaintiff's subsequent appeal to the Appeals Council was denied, as the Council concluded there was no basis for reviewing the ALJ's decision.[15]  The ALJ's decision, therefore, constitutes the final decision of the Commissioner.[16]

Having exhausted all administrative remedies, plaintiff now seeks judicial review of this decision under 42 U.S.C. § 405(g).[17]  Plaintiff sought and received an extension of time to file a motion for summary judgment.[18]  On March 21, 2013, plaintiff moved for summary judgment.[19]  On April 22, 2013, defendant filed a cross-motion for summary judgment.[20]

## B.  Factual Background

Plaintiff was born on August 12, 1957.[21]  She was over fifty years old throughout

---

[12]*Id.* at 16-22; *see also* 20 C.F.R.  § 404.1567(b).
[13] D.I. 11 at 16-22.
[14] *Id.*
[15] *Id.* at 1-3
[16] *Id.*
[17] D.I. 12; *see also* 42 U.S.C. § 405(g).
[18] D.I. 13; D.I. 14.
[19] D.I. 15; *see also* D.I. 16.
[20] D.I. 17; *see also* D.I. 18.
[21] D.I. 11 at 136.

3

the period at issue, and is considered "closely approaching advanced age" at all times relevant to her DIB application.[22]  Plaintiff is a high school graduate and went to college for two years.[23]  Plaintiff has prior vocational experience as a residential counselor assisting people with disabilities, and working as a substance abuse and/or HIV educator.[24]

At the time of the ALJ hearing, plaintiff lived with her husband, her 14-year-old son, and a boarder who rented a room from her.[25]  Furthermore, plaintiff was able to drive,[26] feed herself,[27] use the microwave,[28] prepare sandwiches,[29] cook small meals three times a week,[30] shop for food,[31] maintain her personal care,[32] perform some household cleaning,[33] wash laundry once a week,[34] play games,[35] shop on the computer,[36] and attend church.[37]

## 1. Medical Evidence

---

[22] *Id.* at 22; see also 20 C.F.R. § 404.1563(d) ("[i]f you are closely approaching advanced age (age 50-54), we will consider that your age along with a server impairment(s) and limited work experience may seriously affect your ability to adjust to other work.").

[23] D.I. 11 at 23.

[24] *Id.* at 38-43. 156, 162, 217.

[25] *Id.* at 36-37, 64.

[26] *Id.* at 37 (limiting her driving due to pain in her knee, hip, and hands).

[27] *Id.* at 49.

[28] *Id.* at 64.

[29] *Id.*

[30] *Id.* (Plaintiff cooks for approximately two hours, but receives help from her son and husband.).

[31] *Id.* at 182 (Plaintiff shops with assistance.).

[32] *Id.* at 179.

[33] *Id.* at 181.

[34] *Id.* at 181 (Plaintiff does laundry with assistance.).

[35] *Id.* at 183.

[36] *Id.* at 182.

[37] *Id.* at 66 (Plaintiff goes to church, but can not sit through the entire service.).

4

Prior to the alleged onset date, plaintiff was involved in a motor vehicle accident in October 2006.[38] As a result, she complained of injury to her knee, shoulder pain, and neck pain.[39] An MRI of her left knee showed evidence of a tear of the posterior horn medial meniscus, minimal grade II chondral changes in the medial compartment and patellofemoral compartment, small joint effusion with mild synovitis, and intact cruciate and collateral ligaments.[40] An MRI of her neck revealed cervical disc disease, but no nerve root or spinal cord compression, and no stenosis or cord displacement.[41] Prior to the automobile accident, plaintiff treated with Ganesh Balu, M.D. ("Dr. Balu") and Obimbola Osunkoya, M.D. ("Dr. Osunkoya"), for complaints of lower back pain and hand pain.[42]

Plaintiff continued to treat with Drs. Balu and Osunkoya with complaints of neck, back, leg, and shoulder pain.[43] Plaintiff began treatment with Glen D. Rowe, D.O., P.A. ("Dr. Rowe"), on February 21, 2007, for knee and neck paint caused by the motor vehicle accident.[44] Dr. Rowe diagnosed her neck pain as a strain and recommended knee surgery after trying physical therapy and injections.[45] On April 4, 2007, Dr. Osunkoya during his pre-operation examination, found that plaintiff retained normal gait, power, and tone in all extremities with no loss of sensation.[46] On April 11, 2007,

---

[38] *Id.* at 298.
[39] *Id.*
[40] *Id.* at 267-68.
[41] *Id.* 368.
[42] *Id.* at 245-61
[43] *Id.* at 242-44, 284,94.
[44] *Id.* at 237.
[45] *Id.* at 235-37.
[46] *Id.* at 243.

5

plaintiff underwent left knee surgery.[47]  Plaintiff improved following surgery,[48] and in June and July, underwent a series of Supatz injections, which were "moderately beneficial."[49]

Plaintiff continued to treat with Drs. Rowe, Balu, and Dr. Osunkoya for complaints of neck, knee, and back pain in 2008.[50]  On April 25, 2008, Dr. Balu conducted an EMG study, which showed evidence of left-sided C6 radiculopathy, but the condition was "mild in nature," with no evidence of cubital tunnel syndrome or carpal tunnel syndrome.[51]  On June 5, 2008. Dr. Balu diagnosed plaintiff with a left shoulder impingement, and found decreased range of motion, but no focal weakness in her arms.[52]  Thereafter, Dr. Balu treated plaintiff with medication[53] and Dr. Rowe administered injections to her knee.[54]

On or about October 27, 2008,[55] Dr. Rowe completed a medical source statement and physical to determine plaintiff's ability to perform work related activities on a day-to-day basis in a regular work setting.[56]  Dr. Rowe indicated plaintiff could occasionally lift fifty pounds, but could frequently lift ten pounds, and was able to stand and walk at least two hours in an eight-hour work day.[57]

---

[47] *Id.* at 233.

[48] *Id.* at 232.

[49] *Id.* at 229-31.

[50] *Id.* at 272-83, 224-26, 240-41.

[51] *Id.* at 264.

[52] *Id.* at 279.

[53] *Id.* at 272-78.

[54] *Id.* at 224-26.

[55] Dr. Rowe's report is not dated; however, he indicated his last contact with plaintiff was on October 27, 2008. *Id.* at 299.

[56] *Id.* at 299

[57] *Id.*

6

On November 5, 2008, Dr. Osunkoya found plaintiff exhibited normal gait with normal power and tone in all extremities, and no loss of sensation.[58] As a result, he told plaintiff to exercise regularly, and at a minimum briskly walk two miles, three to five times per week.[59]

On October 25, 2009, Dr. Irwin Lifrak, M.D. ("Dr. Lifrak") performed a consultative examination and found plaintiff had a mild limp, was able to get on and off the examining table without assistance, had full muscle tone in her legs, and full grip strength, and showed no evidence of muscle atrophy.[60] However, Dr. Lifrak found plaintiff had a reduced range of motion in her knees, left shoulder, lower spine, and knees.[61] Nevertheless, Dr. Lifrak concluded plaintiff could stand for a total of three to four hours, and lift up to ten pounds with her right hand and five pounds with her left.[62]

On October 29, 2009, Dr. Joyce Goldsmith, M.D. ("Dr. Goldsmith"), a state agency consultant, completed a physical residual functional capacity assessment and found plaintiff could lift ten pounds frequently, and could stand and/or walk for at least two hours in an eight-hour workday.[63] On January 8, 2010, Anne C. Aldridge, M.D. ("Dr. Aldridge") summarily affirmed Dr. Goldsmith's report.[64]

In October and November 2010, Dr. Balu noted plaintiff had been advised to pursue therapies that she did not want to try and slowly reduced her medication.[65] On

_____

[58] *Id.* at 239-41.
[59] *Id.* at 241.
[60] *Id.* at 301-05
[61] *Id.*
[62] *Id.*
[63] *Id.* at 309-15.
[64] *Id.* at 324.
[65] *Id.* at 319-20.

7

November 16, 2009, Dr. Osunkoya examined plaintiff who complained of static back pain, tender lower back, mild spasm, limited range of motion, but she denied neck pain.[66] Dr. Osunkoya advised plaintiff to briskly walk two miles, three to five times per week and limited her to "no lifting [greater than] 30 lbs."[67]

In May 2010, plaintiff was evaluated by Dr. John Ashby, M.D. ("Dr. Ashby"), who found she exhibited a moderately antalgic gait with limited range of motion, but normal manual muscle testing for neck pain.[68] On July 1, 2010, Dr. Ashby performed an EMG which showed mild carpal tunnel syndrome, chronic C8 radiculopathy with mild ulnar neuropathy, and chronic C6 radiculitis with the left being worse than the right.[69] Dr. Ashby treated plaintiff with medication and referred her to a specialist, Matthew Handling, M.D., for her complaints of hand pain.[70]

On August 11, 2010, Dr. Handling treated plaintiff for her complaints of hand pain; her musculoskeletal exam was negative except for her complaints of difficulty with her hands.[71] Dr. Handling found plaintiff had an active range of motion without pain in both wrists, but decreased wrist strength.[72] As a result, he administered an injection and instructed her to wear a brace.[73]

On November 2, 2010, Dr. Osunkoya evaluated plaintiff for complaints of lumbar

---

[66] *Id.* at 316-17.
[67] *Id.* at 318.
[68] *Id.* at 353-54.
[69] *Id.* at 326, 346-47.
[70] *Id.* at 342-46.
[71] *Id.* at 334-335.
[72] *Id.*
[73] *Id.*

8

pain, left knee stiffness, and numbness in her hands.[74] Plaintiff denied neck pain and stated she was "doing fine."[75]

On November 4, 2010, Dr. Ashby completed a Physical Residual Functional Capacity questionnaire where he opined that plaintiff could sit, stand, or walk less than two hours in an eight-hour workday, and could occasionally lift less than ten pounds.[76]

On November 30, 2010, Dr. Jie Zhu, M.D. ("Dr. Zhu") examined plaintiff, and noted a lumbar x-ray on September 19, 2009 showed trace anterolisthesis and loss of disc height, and moderate facet arthopath.[77] Dr. Zhu found plaintiff's gait to be normal, with full range of motion in her lower back, arms, and legs, her muscle strength as grossly normal, and her sensation to light touch was grossly intact.[78]

## C. The Vocational Expert's Testimony At The Administrative Law Hearing

Adena Leviton, a vocational expert ("VE"), testified at the Administrative Law Hearing.[79] The ALJ asked the VE whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.[80] The VE testified, that given all of these factors, the individual was able to perform the requirements of representative occupations such as: officer helper – 1,000 jobs in the local economy, 170,000 jobs in the national economy; assembler - 400 jobs

---

[74] *Id.* at 364.
[75] *Id.*
[76] *Id.* at 358-61.
[77] *Id.* at 366-70.
[78] *Id.*
[79] *Id.* at 71-81.
[80] *Id.* at 23, 71-81.

in the local economy, 385,000 jobs in the national economy.[81]

## D. The ALJ's Decision

Based on the evidence and testimony, the ALJ determined in her January 28,

2011 opinion, that plaintiff was not disabled and not entitled to DIB.[82] The ALJ's

findings are summarized as follows:

1. The claimant last met the insured statute requirements of the Social Security Act on September 30, 2010.

2. The claimant did not engage in substantial gainful activity during the period from her alleged date of October 26, 2009 through her date last insured of September 30, 2010 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: obesity, degenerative joint disease of the bilateral knees, degenerative disc disease of the cervical spine (20 CFR 404.152(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can stand and walk for 2 hours in an 8 hour workday, sit for 6 hours in an 8 hour workday, with posturals that are occasional but no climbing of a rope, ladder or scaffold, and frequent handling, fingering and feeling. The claimant is to avoid working overhead and no concentrated exposure to extreme cold or hazards. The claimant is limited to simple, unskilled work.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 12, 1957 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

---

[81] *Id.*
[82] *Id.* at 12-23

10

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disabilitiy because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.   The claimant was not under a disability, as defined in the Social Security Act, at any time from October 26, 2009, the alleged onset date, through September 30, 3010, the date last insured (20 CFR 404.1520(g)).

## III.   JURISDICTION

A district court's jurisdiction to review an ALJ's decision regarding disability benefits is controlled by 42 U.S.C. § 405(g). The statute provides, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain review of such decision by a civil action.[83] The Commissioner's decision becomes final when the Appeals Council affirms an ALJ opinion, denies review of an ALJ decision, or when a claimant fails to pursue available administrative remedies.[84] In the instant matter, the Commissioner's decision became final when the Appeals Council affirmed the ALJ's denial of benefits.[85] Thus, this court has jurisdiction to review the ALJ's decision.

## IV.   PARTIES' CONTENTIONS

_____

[83] 42 U.S.C. § 405(g) (2002).

[84] *Aversa v. Secretary of Health & Human Services*, 672 F. Supp. 775, 777 (D.N.J. 1987); *see also* 20 C.F.R. § 404.905 (2002).

[85] D.I. 11 at 1-3.

11

## A. Plaintiff's Contentions

Plaintiff urges an award of benefits, or, in the alternative, for this case to be remanded for further development and analysis before a different ALJ. Plaintiff proffers the following reasons: (1) the ALJ limited plaintiff to standing an walking for "2 hours in an 8 hour work day" and these restrictions are consistent with a limited range of sedentary work; (2) the ALJ failed to accord appropriate deference to the treating physician opinion or properly consider the examining and reviewing physicians' opinions and in doing so, failed to provide a legally adequate basis for rejecting those opinions concerning plaintiff's ability to lift; (3) the ALJ improperly relied on VE testimony that is contrary to regulatory definitions and Agency Policy.

Plaintiff initially contends her medical limitations prevent her from performing the standing, walking, and lifting requirements for light work, and is, therefore, entitled to an award of benefits under sedentary work. In support, plaintiff relies on the Commissioner's regulations for light work which requires, "frequent lifting and carrying."[86] Plaintiff points to the Commissioner's explanation that frequent lifting and carrying means, "being on one's feet for up to two-thirds of the workday [and] that a good deal of standing or walking [is] the primary difference between sedentary and most light jobs."[87] Lastly, plaintiff relies on medical-vocational rule 201.14 when contending she must be found disabled even if she is able to perform a full range of

---

[86] 20 C.F.R. § 404.1567(b).
[87] SSR 83-10, 1983 WL 31251, at *5-6; see also SSR 83-14, 1983 WL 31254, at *4.

12

sedentary work.[88]

Secondly, plaintiff contends the ALJ improperly weighed the medical evidence for her determination that plaintiff could perform light work. Plaintiff points to the four medical opinions during the relevant time period, including that of her treating physician Dr. Ashby which she argues support sedentary work.[89] Another report was provided by the examining physician, Dr. Lifrak, retained by defendant.[90] Lastly, the other two opinions were provided by the non-examining State Agency physicians.[91]

Plaintiff contends these four medical opinions formed the basis for the ALJ's RFC "that the claimant can stand and walk for 2 hours in an 8 hour work day."[92] Additionally, plaintiff argues these opinions are unanimous in limiting plaintiff to lifting at the sedentary level.[93] Plaintiff insists the ALJ rejected each one of them to by finding plaintiff was capable of lifting up to 20 pounds occasionally and 10 pounds frequently when she adopted the lifting requirements of light work.[94] Plaintiff suggests the ALJ gave no explanation as to why part of the same doctor's opinion is given "great weight," but then findings the ALJ ignored are dismissed with "little weight."

_____

[88] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14 (qualifying a person of plaintiff's age, education, and work experience as disabled if unable to perform past relevant work, there are no transferable skills, and the individual is limited to sedentary work).

[89] D.I. 11 at 342, 358-61.

[90] *Id.* at 301-08.

[91] *Id.* at 359, 305, 310, 324.

[92] *Id.* at 16.

[93] Dr. Ashby found plaintiff could lift less than 10 pounds occasionally. D.I. 360. Dr. Lifrak determined plaintiff could lift 10 pounds with her right hand, but only five pounds with her left hand. *Id.* at 305. Drs. Goldsmith and Aldridge concluded plaintiff could lift 10 pounds both occasionally and frequently. *Id.* at 310, 324.

[94] *Id.* at 16.

13

Plaintiff asserts the ALJ rejected the medical opinions and relied instead upon her own lay judgment to fashion an RFC which she improperly characterized as "light" work. Plaintiff maintains such analysis is plain legal error under both the law of this circuit and the Commissioner's regulations and policy.[95] As a result, plaintiff references the "treating physician doctrine," by quoting, "a court considering a claim for disability benefits must give greater weight to the findings of a treating physician than to the finding of a physician who has examined the claimant only once or not at all."[96]

Finally, plaintiff contends the ALJ improperly relied on VE testimony. Plaintiff asserts the application of VE testimony was improper because it is only appropriate when claimant's RFC falls more in the middle range "in terms of the regulatory criteria for exertional ranges."[97] Instead, plaintiff argues that, under the ALJ's finding, she is not in the mid-range, as she cannot perform the frequent standing, walking, and lifting requirements of light work. Furthermore, plaintiff asserts that even though the Dictionary of Occupational Titles ("DOT") lists a job as "light," does not make it "light." Plaintiff points out the "DOT lists maximum requirements of occupations as generally performed."[98] As a result, she argues the relevant question is how the job is to be performed given plaintiff's RFC. Lastly, plaintiff notes the DOT's classifications are at odds with the regulatory definitions and as a result, "the regulatory definitions, of

---

[95] *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355-57 (3d Cir. 2008) (rejecting the ALJ's attempt to discredit the treating and examining source opinions based on his own interpretation of the treatment record, even though that interpretation was supported by the opinion of a non-examining source).

[96] *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993) (internal citations omitted).

[97] *See* SSR 83-12, 1983 WL 31253, *2.

[98] *See* SSR 00-4p, 2000 WL 1898704, *3.

exertional levels are controlling."[99]

## B. Defendant's Contentions

Defendant urges no award of benefits is warranted and substantial evidence supports the ALJ's decision, for the following reasons: (1) the ALJ's RFC is between light and sedentary exertion levels for range of work; (2) the ALJ properly obtained VE testimony rather than rely on the grids; and (3) the ALJ properly weighed the medical source opinions.

Defendant initially contends the ALJ is not required to mechanically assign an RFC that fits the criteria of any specific grid rule or exertional category.[100] Instead, ALJs may assign an RFC that fits some criteria of one category, and the criteria of another category.[101] When the RFC falls between categories, the Medical-Vocational Guidelines do not direct a finding of either disability or non-disability, and instead ALJs should use vocational expert testimony.[102]

Defendant points out the regulations provide the term "light" has the same meaning as in the DOT which is:

_____

[99] *Id.*

[100] SSR 83-12, 1983 WL 31253, at *1. ("In some instances, an individual can do a little more or less than the exertion specified for a particular range of work.").

[101] *Id.* ("e.g., . . . he or she can fully meet the exertional demands of light work and can also perform part of the greater lifting requirement of medium work"); *see also*, *Haynes v. Barnhart*, 416 F.3d 621, 627-28 (7th Cir. 2005) (affirming a hybrid RFC falling between light and sedentary work, with light lifting abilities, but sedentary standing/walking abilities).

[102] SSR 83-12, 1983 WL 31253, at *1; *see also Boone v. Barnhart*, 353 F.3d 203, 209-11 (3d Cir. 2004) (finding where an RFC does not "fall neatly into either" sedentary or light work, SSR 83-12 does not mandate reversal if the ALJ does not make specific findings regarding the erosion of the occupational base, and the ALJ receives the assistance of a VE).

15

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the *weight lifted may be very little, a job is usually* in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time *with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work*, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long period of time.[103]

Defendant further notes that even though there are parts of the definition plaintiff

could not perform, namely standing for up to "two-thirds of a workday,"[104] and

"standing or walking, off an on, for . . . approximately six hours of an eight-hour

workday,"[105] the definition applies to a "full range of light work,"[106] which is

precisely why the ALJ used the term "except" in her RFC.[107] In addition,

defendant points out the regulations specifically acknowledge that work mostly

performed in a seated position may be considered light work.[108]

In sum, defendant contends the ALJ's RFC fell between the definitions of

sedentary work and light work, and she properly relied on vocational expert testimony to

determine the range of jobs available to plaintiff.[109]

Lastly, defendant argues the ALJ properly weighed the medical evidence.

Defendant maintains ALJs weigh medical opinions by considering factors, such as the

_____

[103] 20 C.F.R. § 404.1567(b) (emphasis added).

[104] *Id.*

[105] *Id.*

[106] *Id.*

[107] D.I. 11 at 16.

[108] 20 C.F.R. § 404.1567(b) ("or when it involves sitting most of the time with some pushing and pulling of arm or leg controls").

[109] *Id.* at 23.

examining and treating relationships, the supportability of the opinion, the consistency of the record with the opinion, the source's specialization, and other elements.[110] Defendant further notes the ALJ is not required to give weight to treating source opinions to the extent they are not supported by the record.[111]

Defendant reiterates plaintiff challenges the ALJ's assessment of the opinions regarding her capacity to lift and carry. Defendant argues the medical opinions were not unanimous regarding plaintiff's ability to lift and carry no more than 10 pounds. Defendant points to Dr. Rowe's opinion that plaintiff could lift and carry up to 50 pounds frequently.[112] Defendant emphasizes only one treating physician, Dr. Ashby, offered an opinion inconsistent with Dr. Rowe's, when opining plaintiff could lift less than 10 pounds occasionally.[113] Defendant contends given the disagreement between the two treating sources, the ALJ properly considered the record as a whole to determine the weight accorded, and found plaintiff could lift up to 20 pounds, less than Dr. Rowe's but greater than Drs. Ashby's and Lifrak's opinions.[114]

Defendant points to Dr. Osunkoya's examination on November 2, 2010, where plaintiff denied any neck pain and stated that she was "doing fine."[115] Dr. Osunkoya, on November 16, 2009, found plaintiff could left no more than 30 pounds and advised her

---

[110] *See* 20 C.F.R. § 404.1527.

[111] *See Brown v. Astrue,* 649 F.3d 193, 196-97 (3d Cir. 2011); *see also, Johnson v. Comm'r of Soc. Sec.*, 259 F.3d 198, 204 (3d Cir. 2008).

[112] D.I. 11 at 21.

[113] *Id.* at 358-62.

[114] *Id.* at 20-21.

[115] *Id.* at 364.

17

to walk briskly two miles, three to five times per week.[116] Defendant emphasizes Dr. Zhu's examination on November 30, 2010 confirmed plaintiff had a normal gait, and symmetrical deep tendon reflexes, and grossly normal manual muscle testing, range of motion, and muscle tone of her upper extremities.[117] Lastly, defendant reiterates plaintiff testified she maintained a generally normal range of foundational activity. Defendant argues, considering the whole record, substantial evidence supports the ALJ's assessment of the medical opinions regarding plaintiff's lifting ability, and finding she could lift up to 20 pounds.

## V. STANDARD OF REVIEW

### A. Summary Judgment

In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[118] If there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[119]

This standard does not change merely because there are cross-motions for summary judgment.[120] Cross-motions for summary judgment:

are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not

---

[116] *Id.* at 316. Dr. Osunkoya's record confirms he felt plaintiff could walk that distance.

[117] *Id.* at 366-370.

[118] *Reeves v. Sanderson Plumbling, Prods., Inc.*, 530 U.S. 133, 150 (2000).

[119] *See Hill v. City of Scranton,* 411 F.3d 118, 125 (3d Cir. 2005) (quoting FED. R. CIV. P. 56(c)).

[120] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

18

constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[121]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[122]

## B. ALJ's Findings

Section 405(g) sets forth the standard of review of the ALJ's decision by the district court. The court may reverse the Commissioner's final determination only if the ALJ did not apply the proper legal standards, or the record did not provide substantial evidence to support the ALJ's decision. The Commissioner's factual decisions are upheld if supported by substantial evidence.[123] Substantial evidence means less than a preponderance, but more than a mere scintilla of evidence.[124] As the United States Supreme Court has found, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[125]

In determining whether substantial evidence supports the Commissioner's findings, the court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.[126] The court's review is limited to the evidence that was actually presented to the ALJ.[127] The Third Circuit has explained that

---

[121] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

[122] *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).

[123] *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Medical Center v. Hecklem*, 806 F.2d 1185, 1190 (3d Cir. 1986).

[124] *See Rutherford v. Barnhart*, 399 F.3d 546, 522 (3d Cir. 2005).

[125] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[126] *See Monsour*, 806 F.2d at 1190.

[127] *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001).

19

a "single piece of evidence will not satisfy the substantiality test if the [Commissioner]
ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is
evidence substantial if it is overwhelmed by other evidence, particularly certain types of
evidence (e.g., evidence offered by treating physicians) or if it really constitutes not
evidence but mere conclusion."[128] Thus, the inquiry is not whether the court would have
made the same determination, but rather whether the Commissioner's conclusion was
reasonable.[129] Even if the court would have decided the case differently, it must defer
to the ALJ, and affirm the Commissioner's decision so long as that decision is
supported by substantial evidence.[130]

When review of an administrative determination is sought, the agency's decision
cannot be affirmed on a ground other than that actually relied upon by the agency in
making its decision.[131] In *Securities & Exchange Commission v. Chenery Corp.*,[132] the
Supreme Court found that a "reviewing court, in dealing with a determination or
judgment which an administrative agency alone is authorized to make, must judge the
propriety of such action solely by the grounds invoked by the agency. If those grounds
are inadequate or improper, the court is powerless to affirm the administrative action by
substituting what it considers to be a more adequate or proper basis."[133] The Third
Circuit has recognized the applicability of this finding in the Social Security disability

_____

[128] *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

[129] *See Brown v. Brown*, 845 F.2d 1211, 1213 (3d Cir. 1988).

[130] *See Monsour*, 806 F.2d at 1190-91.

[131] *See Hansford v. Astrue*, 805 F. Supp. 2d 140, 144-45 (W.D. Pa. 2011).

[132] *Sec. & Exch. Comm'n v. Chenery Corp.*, 322 U.S. 194, 196 (1947).

[133] *Id.*

20

context.[134]  Thus, this court's review is limited to the four corners of the ALJ's decision.[135]

## VI.  DISCUSSION

Title 11 of the Social Security Act, 42 U.S.C. § 423(a)(I)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability."[136]  In order to qualify for DIB, the claimant must establish she was disabled prior to the date she was last insured.[137]  A "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.[138]  A claimant is disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[139]

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis.[140]  If a finding of disability or non-disability can be made at any point in the sequential analysis, the Commissioner will not review the

_____

[134] *Fargnoli v. Massanari,* 247 F.3d 34, 44, n.7 (3d Cir. 2001).

[135] *Cefalu v. Barnhart,* 387 F. Supp. 2d 486, 491 (W.D. Pa. 2005).

[136] *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987).

[137] *See* 20 C.F.R. § 404.131.

[138] *See* 42 U.S.C. §§ 423(d)(I)(A), 1382(c)(a)(3).

[139] 42 U.S.C. § 423(d)(2)(A); *Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003).

[140] *See* 20 C.F.R. § 404.1520(a)(4).

21

claim further.[141] At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. If the claimant is engaged in substantial gainful activity, a finding of non-disabled is required.[142] If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from severe impairment or a combination of impairments that is severe. If the claimant is not suffering from a severe impairment or a combination of impairments that is severe, a finding of non-disabled is required.[143]

If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments (the "listing") that are presumed severe enough to preclude any gainful work.[144] When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled.[145] If a claimant's impairment, either singularly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five.[146] At step four, the Commissioner determines whether the claimant retains the RFC to perform his past relevant work.[147] A claimant's RFC is "that which an individual is still able to do despite the limitations caused by [her] impairment(s)."[148] "The claimant bears the burden of demonstrating an inability to return to [her] past relevant work."[149]

---

[141] 20 C.F.R. § 404.1520(a)(4).

[142] See 20 C.F.R. § 404.1520(a)(4)(i).

[143] See 20 C.F.R. § 404.1520(a)(4)(ii).

[144] See 20 C.F.R. § 404.1520(a)(4)(iii); see also Plummer v. Apfel, 186 F.3d 422, 427-28 (3d Cir. 1999).

[145] See 20 C.F.R. § 404.1520(a)(4)(iii).

[146] See 20 C.F.R. § 404.1520(e).

[147] See 20 C.F.R. § 404.1520(a)(4)(iv); see also Plummer, 186 F.3d at 428.

[148] Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001).

[149] Plummer, 186 F.3d at 428.

22

If the claimant is unable to return to his past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work.[150] At this last step, the burden is on the Commissioner to show the claimant is capable of performing other available work before denying disability benefits.[151] In other words, the Commissioner must prove "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [her] medical impairments, age, education, past work experience, and [RFC]."[152] In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments.[153] At this step, the ALJ often seeks the assistance of a VE.[154]

After considering the record and the applicable law, the court finds the ALJ's weighing of the medical evidence is supported by substantial evidence, plaintiff has waived her right to request appointment of a different ALJ, and plaintiff's RFC falls between the light and sedentary work definitions which enabled the ALJ to rely on VE testimony.

## A. ALJ's Weighing of the Medical Opinions

Plaintiff argues the ALJ simply accepted those portions of the opinions which matched her RFC and summarily rejected those that did not and failed to provide an

---

[150] *See* 20 C.F.R. § 404.1520(g) (mandating finding of non-disability when claimant can adjust to other work); *see also Plummer*, 186 F.3d at 428.

[151] *See id.*

[152] *Id.*

[153] *See id.*

[154] *See id.*

23

adequate explanation.[155]  Specifically, plaintiff argues the ALJ erred in weighing medical evidence concerning plaintiff's ability to lift.

An examining doctor's written report setting forth medical findings in the doctor's area of competence "may constitute substantial evidence."[156]  In determining the proper weight for such medical opinions, an ALJ is require to consider all evidence and resolve any material conflicts.[157]  The Third Circuit has found "treating physicians reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."[158]  A treating physician's opinion is "entitled to substantial and at times even controlling weight."[159]  It is accorded "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] record."[160]

It is error, however, to apply controlling weight to an opinion merely because it comes from a treating source if it is not well-established by the medical evidence, or if it is inconsistent with other substantial evidence, medical or lay, in the record.[161]  Thus, the ALJ may reject a treating physician's opinion if it is based on "contradictory medical evidence."[162]  In those instances, "even where there is contradictory medical evidence,

---

[155] *Id.* at 12-13.

[156] *Richardson v. Perales,* 402 U.S. 389, 402 (1971).

[157] *Id.* at 399.

[158] *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Rocco v. Heckler*, 826 F.2d 348, 350 (3d Cir. 1987)).

[159] *Fargnoli v. Halter,* 247 F.3d 34, 42 (3d Cir. 2001).

[160] *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)).

[161] SSR 96-2p, 1996 WL 374188.

[162] *Morales v. Apfel,* 225 F.3d 310, 318 (3d Cir. 2000) (internal citations omitted).

24

. . . and an ALJ decides not to give a treating physician's opinion controlling weight, the ALJ must still carefully evaluate how much weight to give the treating physician's opinion."[163] Further, "treating source medical opinions are still entitled to deference and must be weighted upon using all of the factors provided in 20 C.F.R. 404.1527 and 416.917."[164]

It is improper for an ALJ to disregard a treating physician's medical opinion based solely on his own impression of the record and evaluate of a claimant's credibility.[165] Additionally, some explanation must be given "for rejection of probative evidence which would suggest a contrary disposition."[166] It may be appropriate to accept some evidence and reject the rest; however, all evidence must be considered and a reason for rejection must be provided.[167]

Under the Social Security Regulations, if an opinion is not given controlling weight, the ALJ must determine how much weight to give the opinion, citing specific reasons, and considering the following factors: (1) examining relationship; (2) treatment relationship; (3) supportability with the relevant medical evidence; (4) consistency with the record as a whole; (5) specialization; and (6) any other factors which tend to support or contradict the opinion.[168]

### 1. Dr. Ashby's Opinion

---

[163] *Gonzalez v. Astrue,* 537 F. Supp. 2d 644, 660 (D. Del. 2008).

[164] SSR 96-2p, 1996 WL 374188, at *4.

[165] *See Morales,* 225 F.3d at 318 ("The ALJ cannot disregard [a treating physician's] medical opinion based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of [the claimant's] credibility.").

[166] *Brewster v. Heckler,* 786 F.2d 581, 585 (3d Cir. 1986).

[167] *See Stewart v. Sec'y of H.E.W.,* 714 F.2d 287, 290 (3d Cir. 1983).

[168] 20 C.F.R. § 404.1527(d)(3)-(5).

25

Given the requirements set forth *supra,*[169] the ALJ analyzed the medical opinions, emphasizing the weight accredited to Dr. Ashby's opinion and explaining the reasoning for her determination.[170]

Dr. Ashby's opinion was plaintiff could handle low stressed jobs, could sit for less than 2 hours in an 8 hour workday, stand and walk for less than 2 hours in an 8 hour workday, and could occasionally lift and carry less than 10 pounds.[171] The ALJ assigned great weight to the finding plaintiff is capable of performing low stress jobs which is consistent with the objective medical evidence and record as a whole.[172] She however, assigned little weight to other portions of Dr. Ashby's opinion, because they were inconsistent with his treatment notes, plaintiff's admission to Dr. Osunkoya of the absence of neck pain, and the doctor's failure to cite any objective testing in support of his conclusions.

In reaching her determination, the ALJ first considered the inconsistencies concerning Dr. Ashby's opinion and the relevant medical evidence, mainly, his own records evidencing improved functionality in plaintiff's knees with almost full range of motion.[173] The ALJ further considered the contradictions between Drs. Ashby and Osunkoya, who treated plaintiff from 2006 until 2010, and found no evidence of any neck pain.[174] The ALJ also noted Dr. Ashby's opinion was inconsistent with the overall

_____

[169] *See supra* Part VI.B.
[170] D.I. 11 at 20.
[171] D.I. 11 at 20.
[172] *Id.*
[173] D.I. 11 at 22.
[174] *Id.*

26

record as a whole in that plaintiff admitted to recovering from her left knee injuries.[175] Lastly, the ALJ pointed out Dr. Ashby neither observed plaintiff's condition over a prolonged period nor provided laboratory diagnostic evidence to support his opinion.[176] Based on these considerations and explanations, the ALJ's conclusion is adequately supported.

The weight attributed by the ALJ to Dr. Ashby's opinion about lifting is further supported by the record, namely, Dr. Rowe's opined plaintiff could life up to 50 pounds occasionally and 10 pounds frequently, while Drs. Goldsmith and Aldridge's concluded plaintiff could lift and carry 10 pounds occasionally and frequently.[177] These opinions are inconsistent with Dr, Ashby's finding that plaintiff could occasionally lift and carry less than 10 pounds.[178]

As a result, based on the treatment relationship, a lack of support from relevant medical evidence, and inconsistencies with the medical record as a whole, the ALJ's affording little weight to Dr. Ashby's opinion was appropriate and supported by substantial evidence.

## 2. Dr. Lifrak's Opinion

The ALJ also reviewed the medical evidence to determine the weight accredited to Dr. Lifrak's opinion and explained her reasoning.[179]

Dr. Lifrak's found plaintiff could walk up to one block before having to stop due to

---

[175] *Id.*
[176] *Id.*
[177] *Id.* at 21.
[178] *Id.*
[179] *Id.* at 20-21.

27

excessive pain, climb stairs on a limited basis, sit for 5-6 hours and stand for 3-4 hours in an 8 hour workday, lift 10 pounds with her right hand and 5 pounds with her left on a regular basis.[180]  The ALJ assigned little weight to Dr. Lifrak's opinion as it was inconsistent with the objective medical evidence and record as a whole,[181] in particular, his consultative exam notes reflecting plaintiff can ambulate effectively without need of an assistive device.[182]  The ALJ also found Dr. Lifrak's opinion inconsistent with the treatment notes of Dr. Ashby that demonstrated nearly full range of knee motion with no neurological weakness in the lower extremities.[183]  Dr. Ashby's finding suggests plaintiff could walk a distance larger than a block without experiencing pain.[184]  Dr. Ashby's treatment notes further indicate plaintiff was capable of lifting higher weight in absence of any weakness in her lower extremities.[185]

In light of the limited treatment relationship,[186] the relevant medical evidence, and inconsistencies with the medical record as a whole, the ALJ's affording little weight to Dr. Lifrak's opinion is supported by substantial evidence.

### 3.     Dr. Rowe's Opinion

The ALJ analyzed the medical record to explain the weight applied to Dr. Rowe's opinion.[187]  Dr. Rowe found plaintiff could lift and carry 50 pounds occasionally, 10 pounds frequently, stand and walk for 2 hours in an 8 hour workday, sit for 6 hours in

---

[180] *Id.* at 305.
[181] *Id.* at 20.
[182] *Id.* at 22.
[183] *Id.* at 20-21.
[184] *Id.* at 20.
[185] *Id.*
[186] The only time Dr. Lifrak met with plaintiff was on October 25, 2009.
[187] D.I. 11 at 21.

28

an 8 hour workday, but never climb, balance, stoop, kneel, crouch or crawl, and to avoid heights and temperature extremes.[188]  He further opined plaintiff had no restriction in handling, fingering, reaching or feeling.[189]  The ALJ assigned great weight to Dr. Rowe's opinion that plaintiff can stand and walk for 2 hours in an 8 hour workday, sit for 6 hours in an 8 hour workday, and avoid temperature extremes as it was consistent with the objective medical evidence and the record as a whole.[190]

The ALJ assigned little weight to Dr. Rowe's opinion regarding plaintiff's weight lifting capabilities, and the absence of any limitations in handling, fingering, reaching or feeling, and determined plaintiff's exertional capacity was more limited.[191]  The ALJ further assigned little weight to Dr. Rowe's limitations on climbing, balancing, stooping, kneeling, crouching, or crawling, as inconsistent with plaintiff's admission to Dr. Lifrak that she could climb stairs and Dr. Ashby's treatment notes reflecting essentially full range of knee motion.[192]  Dr. Rowe's opinion is also inconsistent with Drs. Goldsmith and Aldridge conclusions that plaintiff could climb a ramp and stairs, balance, stoop, kneel, crouch, and crawl.[193]  Lastly, the ALJ noted the absence of testing to support Dr. Rowe's opinion.[194]  Therefore the ALJ's determination regarding Dr. Rowe's findings is based on substantial evidence.

## B.    Assignment to a Different ALJ

---

[188] *Id.*
[189] *Id.*
[190] *Id.*
[191] *Id.*
[192] *Id.*
[193] *Id.* at 21.
[194] *Id.*

29

Plaintiff contends if remanded, the court should specifically require and order the Commissioner to assign this matter to a different ALJ. Defendant argues plaintiff raised no claim of bias either at the administrative level or before this court, and any attempt to impugn the integrity of the ALJ has no bearing on this court's review under 42 U.S.C. 405(g).

The Third Circuit in *Ginsburg v. Richardson*, found "[I]f the appellant felt that she was being deprived of a fair hearing, the proper procedure would have been for her to request the examiner to withdraw from the case. Thus, appellant's failure to request withdrawal of the examiner during the hearing or in her request for review before the Appeals Council constitutes a waiver of her right to object to the conduct of the examiner."[195]

Based on plaintiff's failure to request withdrawal of the ALJ during the hearing or before the Appeals Council, she waived her right to object at this stage of the proceedings.

## C.    The ALJ's RFC Finding

At the fifth step, the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age education, and past work experience, she can perform work that exists in significant numbers in the regional economy.[196] In this step, "the ALJ often seeks advisory testimony from a vocational expert. . . . [T]he ALJ will generally consult the *Dictionary of Occupational Titles* ('DOT'), a publication of

---

[195] *Ginsburg v. Richardson*, 436 F.2d 1146, 1151-52 (3d Cir. 1971) (citing 20 C.F.R. § 404.922).

[196] 42 U.S.C. § 423(d)(2)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Sykes v. Apfel*, 228 F.3d 295, 263 (3d Cir. 2000).

the United States Department of Labor that contains descriptions of the requirements

for thousands of jobs that exist in the national economy, in order to determine whether

any jobs exist that a claimant can perform."[197] Additionally, "if the claimant's residual

functional capacity falls between two Medical-Vocational Guidelines which direct

opposite conclusions, i.e., 'Not disabled' at the higher exertional level and 'Disabled' at

the lower exertional level, then vocational assistance is advisable."[198] When the

claimant cannot perform substantially all of the exertional demands of work at a given

level of exertion and/or has non-exertional limitations, the Medical-Vocational rules are

used as a framework for decision-making.[199]

The statutory definition of "light work" is in pertinent part,

"lifting no more than 20 pounds at a time with frequent lifting or carrying of
objects weighing up to 10 pounds. . . . 'Frequent' means occurring from
one-third to two-thirds of the time. Since frequent lifting or carrying
requires being on one's feet up to two-thirds of a workday, the full range of
light work requires standing or walking, off and on, for a total of
approximately 6 hours of an 8-hour workday."[200]

Plaintiff notes, "the DOT identifies a job as light does not make it light, because

'the DOT lists maximum requirements of occupations as generally performed.'"[201]

Additionally, plaintiff argues, although the DOT identifies the jobs at issue as light, they

_____

[197] *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002); *see also Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003).

[198] *Murphy v. Barnhart*, Civ. A. No. 01-651-KAJ, 2004 WL 202891, at \*7 (D. Del. Jan. 22, 2004); *see also* SSR 83-12 ("In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, VS assistance is advisable . . . .").

[199] *Id.*

[200] SSR 83-10.

[201] D.I. 16 at 7 (citing SSR 00-4p).

31

are at best, sedentary jobs, under the Commissioner's definitions of light versus sedentary work.[202]

The ALJ relied on VE testimony to determine plaintiff could perform a limited number of light jobs, such as, office helper and assembler.[203]  Reliance on VE testimony was appropriate since plaintiff's RFC placed her between the categories of light and sedentary work.  Therefore, the ALJ's determination is supported by substantial evidence and plaintiff's motion for summary judgment is denied.

Pursuant to the Medical-Vocational Guidelines, a job is in the light category "when it requires a good deal of walking or standing," which is "the primary difference between sedentary and most light jobs," except for sitting jobs that require pushing or pulling of arm or leg controls.[204]  This exception is not applicable since the jobs identified by the VE did not fall within that description.

The ALJ found plaintiff could lift 20 pounds occasionally but not 10 pounds frequently.[205]  The ALJ also found plaintiff could only "stand and walk for 2 hours in an 8 hour workday."[206]  The full range of light work requires the individual to be able to walk and stand for one-third to two-thirds of the time.[207]  The ALJ found plaintiff could only walk and stand for one-fourth of a usual workday.[208]

The ALJ's conclusion plaintiff can lift 20 pounds occasionally, falls within the

_____

[202] *Id.*
[203] D.I. 11 at 23.
[204] SSR 83-10.
[205] D.I. 11 at 22.
[206] D.I. 11 at 22.
[207] SSR 83-10 ("[F]requent means occurring from one-third to two thirds of the time.").
[208] D.I. 11 at 22.

32

definition of light work.[209] The ALJ's other conclusions, however suggest plaintiff's abilities fall within the definition of sedentary work, namely, her ability to walk and stand and her inability to frequently lift 10 pounds.[210] As a result, plaintiff's RFC fell between the sedentary and light work definitions, which warranted guidance from a VE.[211]

In sum, the ALJ properly applied the Medical-Vocational Guidelines when finding plaintiff could perform a limited range of light jobs.[212] When regulatory definitions are applied, plaintiff's RFC fell between light and sedentary work. As a result, the ALJ properly relied on the VE who determined plaintiff could perform a limited number of light jobs and supported a finding of not disabled. The ALJ's conclusions, thus, are supported by substantial evidence.

## VII. ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, it is recommended that:

(1) Defendant's cross-motion for summary judgment (D.I. 15) be GRANTED.

(2) Plaintiff's motion for summary judgement (D.I. 17) be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for

---

[209] *See* SSR 83-10.
[210] *Id.*
[211] *Id.*
[212] *Id.*

33

Objections Filed under FED. R. CIV. 72, dated October 9, 2013, a copy of which is

available on the Court's website, www.ded.uscourts.gov.

Date: November 18, 2013       /s/ Mary Pat Thynge
                                      UNITED STATES MAGISTRATE JUDGE