IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROXIE L. IDEGWU, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 12-1134-RGA |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | : |
| Defendant. | : |

**MEMORANDUM**

Plaintiff has two main objections.[1] The first is that there was not substantial evidence supporting the ALJ's conclusion that the Plaintiff "could lift above the sedentary level of exertion." (D.I. 21, p. 5). The second is that the ALJ erred in deciding that Plaintiff had a RFC above the sedentary level. The two objections have overlap.

The ALJ discussed various medical opinions about Plaintiff's capacity for lifting. Dr. Ashby, a treating physician, opined that Plaintiff could "lift and carry" "less than 10 lbs." "occasionally." (D.I. 11 at 360). The ALJ gave this opinion little weight.[2] Dr. Lifrak, who examined Plaintiff once, concluded that "using the right hand, [Plaintiff] is able to lift weights of

---

[1] Plaintiff purports to incorporate by reference her previous briefs (D.I. 21, p. 1) to which the Defendant responds similarly. (D.I. 22, p. 1). The purported incorporations by reference are without effect, as they do not identify any specific objections to the Report & Recommendation.

[2] The ALJ recited that Dr. Ashby reported Plaintiff's symptoms, made a diagnosis, and "opined" three limitations. The ALJ accepted a portion of one of the limitations, and rejected the rest, citing treatment notes, an admission, and the absence of "objective testing." (D.I. 11 at 20). Other than the lack of "objective testing," the reasons given do not seem to be inconsistent with Dr. Ashby's opinion about lifting and carrying.

1

up to 10 pounds, and using the left hand [Plaintiff] is able to lift weights of up to 5 pounds on a regular basis." (D.I. 11 at 305). The ALJ gave this opinion little weight.[3] Dr. Rowe, a treating orthopedist, who last saw Plaintiff on October 27, 2008 (D.I. 11 at 300)[4], opined that Plaintiff's "maximum capacity to lift and/or carry" was "50 pounds" occasionally and "10 pounds" frequently.[5] (D.I. 11 at 299). The ALJ gave Dr. Rowe's lifting and carrying opinion little weight, because "giving [Plaintiff] every benefit of the doubt," the ALJ thought Plaintiff's exertional capacity was more limited than Dr. Rowe did. (D.I. 11 at 21). Dr. Goldsmith, a state agency medical consultant (i.e., a records reviewer), opined that Plaintiff could occasionally lift and/or carry 10 pounds, and could frequently lift and/or carry 10 pounds.[6] (D.I. 11 at 310). While the ALJ accepted most of Dr. Goldsmith's other opinions, the ALJ gave the lifting and carrying opinion little weight "as there is no objective evidence in the record that reflects that [Plaintiff's] exertional capacity is as limited as that assessed by [Dr. Goldsmith]." (D.I. 11 at 21).

Thus, four medical opinions – including two (Drs. Lifrak and Goldsmith) that were from doctors hired by the State – on lifting and carrying were rejected by the ALJ. The ALJ did not directly state in her opinion how many pounds Plaintiff could lift and carry. The ALJ did,

---

[3] The ALJ's explanation of the reasons for discounting Dr. Lifrak's opinion do not seem to be relevant to his opinion about lifting.

[4] The disability onset date was October 26, 2009, that is, a year after Dr. Rowe last saw Plaintiff.

[5] "Occasionally" means up to 1/3 of an 8 hour work day, and "frequently" means between 1/3 and 2/3 of an 8 hour workday. (D.I. 11 at 299).

[6] Dr. Aldridge affirmed this opinion (D.I. 11 at 324) but having another doctor add one word ("affirmed") to the file cannot carry any weight.

2

however, conclude that Plaintiff had the RFC "to perform light work as defined in 20 C.F.R. § 404.1567(b) except that [Plaintiff] can stand and walk for 2 hours in an 8 hour workday, sit for 6 hours in an 8 hour workday, . . . ." (D.I. 11 at 16). The regulations define light work: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Thus, by implication, the ALJ determined that Plaintiff could occasionally lift 20 pounds, when no doctor other than Dr. Rowe (at a time a year before the relevant time) thought Plaintiff could lift more than 10 pounds occasionally.[7]

The Commissioner argues that the ALJ's determination is supported by Dr. Rowe's opinion and notes of Dr. Osunkoya. The problem with the former is that the ALJ gave the opinion "little weight" and, if the ALJ had considered the matter consistently with the consideration of the other opinions, and the rest of Dr. Rowe's opinion, the ALJ would have discounted it for failure to "point to any objective testing to support" the conclusions. The problem with the latter is not so much that the ALJ did not cite the notes for any conclusion about lifting and carrying, but that the notes are (to me, at least) ambiguous as to what they mean. The end of a three-page office note by Dr. Osunkoya, dated November 16, 2009, reads, "Chronic back pain . . . f/u Dr. Balu/ortho . . . no lifting > 30 lb." (D.I. 11 at 318). While it might be inferred that when a doctor instructs a patient not to lift more than 30 pounds, the doctor believes that the patient can lift up to 30 pounds, it requires a knowledge of medical practice that I do not

---

[7] By further implication, since a person cannot lift and carry while sitting, the RFC determination that Plaintiff could not stand or walk more than 2 hours also necessarily further limited the lifting, with the "occasional" lifting of 20 pounds being reduced to 2 hours lifting 20 pounds, and the "frequent" lifting of 10 pounds being reduced to less than occasional lifting of 10 pounds.

have to make that inference.[8]

Thus, the ALJ determined that Plaintiff had exertional capabilities that were inconsistent with every medical opinion in the record. The ALJ's explanation for the rejections were, in my opinion, insufficient. Three of the four opinions were rejected because there was no objective testing to support the conclusion. The ALJ did not identify the objective testing that might have been done to determine how many pounds could be lifted and/or carried for how long by the Plaintiff. The ALJ did not discuss any other factors relevant to determining how much weight to give the various opinions. Some explanation must be given "for rejection of probative evidence which would suggest a contrary disposition." (D.I. 20 at 25, citing *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986)). I cannot conclude that the ALJ gave sufficient explanation to justify rejecting three opinions[9] that would have led to a conclusion that Plaintiff's exertional capacity was insufficient for "light work."[10] Thus, the lack of substantial evidence for the lifting

---

[8] The Magistrate Judge, who knows a lot more about medicine, medical terminology, and doctors than I do, acknowledged Dr. Osunkoya's limitation (D.I. 20 at 8) but did not factor it into her analysis. And the ALJ, who also knows much more about medicine and medical terminology than I do, did not mention it.

[9] I think it is noteworthy that two of the three rejected opinions were those of the State agency physicians. I understand that the bond between a treating doctor and patient may give the treating doctor a reason to see things in the light most favorable to the patient. There is no basis, however, to believe that the State agency physicians had any reason to find Plaintiff any less limited than she actually was. Thus, the ALJ's relatively cursory rejection of their opinions is puzzling.

[10] I address briefly the Plaintiff's other argument. Sedentary work is defined in the regulations:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are

limitations carries through as a lack of substantial evidence for the RFC determination.

It appears that the parties are agreed (D.I. 21 at p.1 [citing the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.14], to which the Commissioner does not respond) that, if the ALJ was wrong to find the RFC that the ALJ set forth, then the Plaintiff would be disabled. I cannot, however, conclude that the ALJ was wrong. I can only conclude that the ALJ did not sufficiently justify her analysis so that I can conclude there is substantial evidence to support it. Thus, I will remand this matter to the Commissioner for further consideration consistent with this Memorandum.

Jan. 16, 2014
Date

/s/ Richard G. Andrews
United States District Judge

---

required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). As I understand Plaintiff's argument, the ALJ's RFC determination has aspects to it that do not meet the minimum requirements for sedentary work. That is, sedentary work requires the capacity to spend up to 8/3 of a 8 hour workday standing or walking, and the ALJ found that Plaintiff could not stand and walk for more than 6/3 of a 8 hour workday. Thus, Plaintiff argues that the RFC should be to no more than a reduced range of sedentary work. (D.I. 21, p.4). It would therefore have been error, Plaintiff argues, to characterize the RFC as being light work with limitations. Indeed, the ALJ does not explicitly state which (or, indeed, any) aspect of light work that the Plaintiff can do. It would be helpful on remand for the ALJ, if the finding is again for light work with limitations, to explain how, given whatever limitations the ALJ finds, the Plaintiff could be said to be able to do any aspect of light work.